IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROY PERRY DYKES,

    Plaintiff,

        v.

                      CIVIL ACTION FILE
                      NO. 1:09-CV-3602-TWT

PIEDMONT HEALTHCARE, INC.,

    Defendant.

## ORDER

This is an action for overtime compensation under the Fair Labor Standards Act. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 41] and the Defendant's Motion for Summary Judgment [Doc. 42]. For the reasons set forth below, the Court DENIES the Plaintiff's Motion for Summary Judgment [Doc. 41] and GRANTS the Defendant's Motion for Summary Judgment [Doc. 42].

## I. Background

Perry Dykes was an employee of Piedmont Healthcare, Inc. ("Piedmont") from April 1, 2006 through September 22, 2009. During this time, Dykes was a non-exempt employee entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"). Further, Dykes was an hourly employee required to clock in and out at the beginning and end of each shift. Piedmont recorded his time using a Kronos

time keeping system and calculated his pay using the Lawson Payroll Program. (Klein Decl. ¶ 6.)  As a Transplant Coordinator, Dykes was entitled to various pay rates depending upon when he worked and whether he was called back to work. Initially, Dykes received a Base Rate.  If Dykes reported to work as scheduled, he also received Certification Pay.  If Dykes worked on weekends or an irregular shift, he was entitled to a Weekend Differential or Shift Differential.  If Dykes was not scheduled to work, but was called back to work, he was entitled to "On Call" pay.  The parties dispute Dykes' "On Call" rate.  The Plaintiff asserts that Piedmont's policy entitled him to time and a half for any On Call hours.  The Defendant denies that Dykes was entitled to time and a half for any non-overtime hours.  Finally, Dykes was entitled to a separate, lower rate for "Call Time."  While working Call Time hours, Dykes was free to do personal business but had to be available to return to work.[1]

To compute Dykes' overtime pay, Piedmont first calculated Dykes' "regular rate."  Under the FLSA, employers must pay overtime hours at one and one-half times an employee's regular rate.  See 29 U.S.C. § 207(a)(1).  To determine Dykes' regular rate, Piedmont used a weighted average method.  Thus, Piedmont calculated the total wages it owed Dykes for a single week of work.  This amount included adjustments for Certification Pay, Weekend Differential, Shift Differential, On Call Pay, and Call

---

[1]Many businesses refer to this as being "on call."

Time Pay[2].  (Klein Decl. ¶¶ 19-21.)  Piedmont then divided this sum by the hours Dykes worked during that week, excluding any Call Time hours. (Id.)  This figure represented Dykes' "regular rate" as defined by the FLSA.  Piedmont then divided Dykes' regular rate in half.  (Id. ¶ 22.)  For every hour above 40 hours in a single week, Dykes was entitled to his normal wage (Base Pay plus any adjustments for time or day) plus *at least* half of his regular rate.  (Id.)  If Dykes worked an overtime hour for which he would ordinarily be paid more than his regular rate (if, for instance, the shift was subject to Weekend or Shift Differentials), he was paid one and one-half times the rate to which he would otherwise have been entitled.  (Id. ¶¶ 23-30.)  Thus, Piedmont's formula could result in overtime wages greater than one and one-half times Dykes' regular rate.

Piedmont terminated the Plaintiff on September 22, 2009.  On December 22, 2009, Dykes filed this suit against Piedmont, alleging that the Defendant failed to pay him overtime in violation of the FLSA [Doc. 1].  See 29 U.S.C. § 216(b).  The Plaintiff has moved for summary judgment on the issue of liability [Doc. 41].  Dykes claims that Piedmont calculated his overtime pay incorrectly.  The Defendant has also

---

[2]As discussed below, the FLSA does not require that employers include Call Time Pay in the regular rate calculation.

moved for summary judgment [Doc. 42].  Piedmont argues that there is no issue of material fact as to whether it correctly paid Dykes for all the hours he worked.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.    Dykes' Motion for Summary Judgment

The Plaintiff has moved for summary judgment on the issue of liability.  In his original brief, Dykes contends that the Defendant miscalculated his overtime pay and thus failed to pay him one and one-half times his regular rate for overtime hours. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 4-11.)  The Plaintiff offers several examples

of Piedmont's miscalculations using figures from Lawson spreadsheets produced by the Defendant.  (See id., Ex. 1.)  Specifically, the Plaintiff calculates Dykes' regular rate by adding the values listed in the "Amount" column of the Lawson spreadsheet for a given week and dividing that total by the number of hours Dykes worked that week.  Using these calculations, the Plaintiff argues that for several weeks, he was paid less than one and one-half times his regular rate for the overtime hours he worked.  (See id. at 5-11.)

The Defendant, however, contends that Dykes has misinterpreted the Lawson spreadsheets.  Edward Klein, Piedmont's Director of Compensation and HR Systems and Corporate Director of Compensation and Benefits, testified that the figures in the "Amount" columns of the Lawson spreadsheets *already* include overtime pay.  (Klein Decl. ¶ 24, Doc. 42-1.)  Thus, the Lawson system, which is organized by type of shift (i.e., Call Time, Regular Day, etc.) automatically calculates the number of hours per shift type that were also overtime hours.  (See id., Ex. A & B.)  The system then applies a one and one-half pay rate to those overtime hours and reflects the total, inclusive of overtime pay, in the "Amount" column.  The Plaintiff has produced no evidence to contradict Klein's testimony regarding the Lawson spreadsheet values.  Indeed, as discussed below, the Plaintiff seems to have abandoned this theory for

purposes of his motion for summary judgment.  In any event, the Plaintiff has not shown, as a matter of law, that Piedmont miscalculated his overtime wages.

In its Reply, however, the Plaintiff changes his theory.  Rather than argue that Piedmont failed to calculate overtime hours correctly based on the Lawson spreadsheets, Dykes asserts that the Defendant failed to apply the proper rate for Call Time when calculating his regular rate.  In support of this argument, Dykes produced a policy indicating that employees who are called back to work are entitled to time and one-half pay.  (See Dykes Aff., Ex. 1.)  The Plaintiff claims that Piedmont failed to value Call Time hours at one and one-half when calculating his regular rate.  (See Reply in Supp. of Pl.'s Mot. for Summ. J. at 4-9.)  The Court, however, will not consider arguments raised for the first time in a reply brief.  United States v. Georgia Dep't of Natural Res., 897 F. Supp. 1464, 1471 (N.D. Ga. 1995) (citing United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir. 1984)).  Here, the Plaintiff did not raise this argument in its original motion and thus the Court will not consider it now.  For these reasons, the Plaintiff's motion is denied.

B.    Piedmont's Motion for Summary Judgment

The Defendant has also moved for summary judgment.  Specifically, Piedmont contends that there is no issue of material fact that it did not pay Dykes overtime in compliance with the FLSA.  Dykes concedes that Piedmont's overtime calculation

formula is valid under the FLSA. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 2.) The Plaintiff asserts, however, that Piedmont failed to follow its own formula and also failed to keep accurate records of Dykes' hours.

        1.    <u>Piedmont's Failure to Properly Apply Its Overtime Formula</u>

As discussed above, the Defendant used a weighted average method to calculate overtime pay. First, Piedmont added all the wages Dykes earned in one week and divided that sum by the number of hours Dykes worked in that same week. (Klein Decl. ¶¶ 19-21.) This calculation yielded Dykes' regular rate. The Defendant then divided the regular rate in half and added *at least* that amount to any wages Dykes earned for overtime hours. While the Plaintiff does not dispute the validity of Piedmont's formula, he claims that the Defendant misapplied the formula. As discussed above, Dykes has presented snapshots from the Lawson spreadsheets to support his claim. Using the figures listed in the "Amount" column of the Lawson spreadsheets, Dykes argues that he was paid less than one and one-half times his regular rate for overtime hours during several weeks. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 6-12.)

As discussed above, however, Edward Klein has testified that the figures in the "Amount" column of the Lawson spreadsheets already include overtime pay. The Lawson payroll system automatically credits overtime hours for any given shift at one

and one-half times Dykes' non-overtime wages.  (Klein Decl. ¶ 24.)  Thus, the values in the Lawson spreadsheets cannot be used to calculate a regular rate because they are already inflated by the overtime pay premium.  Further, Piedmont has produced a spreadsheet, prepared by Klein, showing the Defendant's calculations for each of Dykes' pay periods from October 12, 2006 through October 10, 2009.  (See Klein Decl., Ex. B.)  In this spreadsheet, Column P denotes Dykes' "straight" compensation, excluding the one and one-half premium for overtime hours.  Column V represents Dykes' wages *inclusive* of the one and one-half overtime premium.  Notably, the values listed in the "Amount" column of the Lawson spreadsheet correspond to the values in Column V of Klein's spreadsheet.  (See id.; Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., Ex. 1.)[3]  The Plaintiff has presented no evidence contradicting Klein's explanation of the Lawson spreadsheets.  Indeed, the Plaintiff has offered no evidence that the values in the Lawson spreadsheet represent "straight" pay to which Dykes was entitled a one and one-half premium for overtime hours.  Further, as discussed above, the Plaintiff seems to have abandoned this theory for purposes of its own motion for

---

[3]For example, during the week of February 10, 2007, Column P indicates that Dykes' "straight" pay, excluding overtime pay, was $2,122.55.  (Klein Decl., Ex. B, 2/17/07 tab, cell P8.)  As indicated in Column V, Dykes' total pay for this week, including overtime, was $2,391.78.  (Id., cell V8.)  This is the same amount listed in the "Amount" column of the Lawson spreadsheet for the week of February 10, 2007 [see Doc. 41-1].  The Plaintiff calculated Dykes' regular rate using the values listed in the "Amount" column of the Lawson spreadsheets.

summary judgment.  (See Reply Br. in Supp. of Pl.'s Mot. for Summ. J.)  For these reasons, there is no issue of material fact as to whether the Defendant properly applied its overtime formula.

### 2.    Piedmont's Failure to Keep Accurate Time Records

In opposition to the Defendant's motion for summary judgment, the Plaintiff has offered a time report, attached to its response brief as Exhibit 4.  (See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 4.)  This exhibit indicates the hours Dykes worked while employed by Piedmont.  On several dates, however, the report lists only question marks.    Thus, Dykes argues that Piedmont failed to keep accurate employment records in violation of 29 U.S.C. § 211(c).[4]  The Defendant, however, claims that it did not produce the report cited by the Plaintiff.  (Reply in Supp. of Def.'s Mot. for Summ. J. at 6.)  John Stivarius, lead counsel for Piedmont, testified that the Defendant did not produce Exhibit 4 during discovery.  (Stivarius Decl. ¶ 7.) Further, Stivarius testified that the Plaintiff did not produce Exhibit 4 in response to

---

[4]The statute provides, in pertinent part, that "[e]very employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."  29 U.S.C. § 211(c).

the Defendant's requests for production.  (Id. ¶ 7.) Edward Klein also testified that the Defendant would not have created Exhibit 4.  (Klein Decl. ¶ 4.)  Other than a single comment in its pleading alleging that the Defendant produced Exhibit 4, the Plaintiff has offered no evidence to show that document's authenticity.  Indeed, Piedmont notes that the records it did produce during discovery *do* designate the hours Dykes worked on all dates mentioned by the Plaintiff.  (See id. at 7; Def.'s Mot. for Summ. J., Ex. 1A.)[5]  Thus, given that Piedmont *has* produced documents accounting for the hours Dykes worked on each day of his employment, there is no issue of material fact as to whether Piedmont kept accurate records in accordance with 29 U.S.C. § 211(c).

Even if the Defendant had not properly recorded Dykes' hours for several days, the Plaintiff has not sufficiently established the number of hours for which he has not been paid.  Where an employer fails to keep accurate records, an employee may show the amount of unpaid work by proving "that he has in fact performed work for which he was improperly compensated and [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).  If the employee

---

[5]For instance, the Plaintiff argues that Piedmont did not keep a record for the hours Dykes worked on July 12, 2009. (See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 14.)  The Time Detail Reports produced by the Defendant, however, clearly show that Dykes was credited 5.0 Call Back hours and 19.0 On Call hours on July 12, 2009. (See Def.'s Mot. for Summ. J., Ex. 1A part 9.)

does so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687-88.   In Santelices v. Cable Wiring, 147 F. Supp. 2d 1313 (S.D. Fla. 2001), the defendant employer failed to keep accurate employment records.  The plaintiff testified that he usually worked six days a week, arriving each day at 6:30 a.m. and returning home after 5 p.m.  The court found that this testimony met the plaintiff's burden to show the amount of unpaid work "as a matter of just and reasonable inference." Id. at 1328.

Here, in contrast to Santelices, Dykes has produced *no* evidence establishing how many hours he worked on the dates he claims Piedmont failed to keep accurate records.  The Plaintiff claims that "the Lawson Payroll record and Time Detail Report reflects that Dykes routinely worked more than 40 hours per week."  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 15.)  As discussed above, however, the Plaintiff was properly paid for the hours indicated in the Lawson spreadsheets and Time Detail Reports.  To the extent that the Plaintiff claims Piedmont failed to accurately record his hours on ten specific occasions, he has failed to produce *any* evidence showing how many hours he actually worked on those days.  Thus, there is no issue of material fact as to whether the Defendant failed to record and pay Dykes for the hours he worked.

IV.  <u>Conclusion</u>

For the reasons set forth above, the Court DENIES the Plaintiff's Motion for

Summary Judgment [Doc. 41] and GRANTS the Defendant's Motion for Summary

Judgment [Doc. 42].

SO ORDERED, this 6 day of April, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge